UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| PLUNKETT'S PEST CONTROL, INC.<br>40 NE 52nd Way<br>Fridley, MN 55421-1014<br><br>Plaintiff<br><br>v.<br><br>KEVIN MCCLERNON<br>21855 Boord Road<br>Marysville, OH 43040-8817<br><br>and<br><br>ECO-SENTIAL PEST SOLUTION LLC<br>21855 Boord Road<br>Marysville, OH 43040-8817<br><br>Defendants | CASE NO.<br><br>JUDGE<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**COMPLAINT**<br>(***JURY DEMAND ENDORSED***<br>***HEREON***) |

* * * *

NOW COMES Plaintiff Plunkett's Pest Control, Inc. ("Plunkett's"), by and through undersigned counsel, and for its Complaint against Defendants Kevin McClernon ("McClernon") and Eco-Sential Pest Solutions LLC ("Eco-Sential") (collectively referred to as "Defendants") states as follows:

## NATURE OF ACTION

1. This is an action to restrain and enjoin Defendants (and those acting in concert with them) from violating the Non-Competition and Trade Secret Agreement that

McClernon executed during his employment relationship with Plunkett's. In addition to McClernon's unfair competition, Defendants are misusing Plunkett's confidential, propriety trade secret business information. Further, Plunkett's seeks to enjoin Defendants from tortiuously interfering with Plunkett's business relationships with its customers.

2. The injunctive relief sought herein is necessary to protect Plunkett's legitimate business interests from unfair competition and irreparable injury. Plunkett's further seeks damages for McClernon's breach of the Non-Competition and Trade Secret Agreement, and Defendants' other fraudulent and tortious conduct.

## PARTIES, JURISDICTION AND VENUE

3. Plunkett's is a Minnesota Corporation with its principal place of business in Fridley, Minnesota.

4. Plunkett's is a full-service pest management firm that operates in twenty-four States, including Ohio, wherein it derives substantial revenue.

5. McClernon is a citizen of the State of Ohio and is domiciled in Union County, Ohio.

6. McClernon is a former employee of Plunkett's. McClernon was initially hired in 2016 as a Technician, and ultimately attained the position of Director of Operations, South Division, prior to his termination on or around February 27, 2025.

7. Eco-Sentinel is an Ohio limited liability company with its principal place of business in Union County, Ohio.

8. Eco-Sentinel is a full-service pest management firm incorporated by McClernon after his termination from Plunkett's, and is a direct competitor of Plunkett's.

9. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and because the parties are citizens of different States.

10. This Court has personal jurisdiction over Defendants because their conduct that forms the basis of this action occurred within this district, and all of the wrongful acts alleged herein were committed in Ohio.

11. This Court is the proper venue for this matter pursuant to 28 U.S.C. § 1391 because one or all Defendants reside within this district.

## FACTS RELATING TO ALL COUNTS

12. In 2016, McClernon began his employment with Plunkett's as a Technician, with the expectation that Plunkett's would promote McClernon to a Supervisor position four months after his start date.

13. After McClernon's promotion to supervisor, on or around October 1, 2018, McClernon was promoted to a Regional Operations Manager for Plunkett's Southern Region.

14. As a condition of McClernon's continued employment, Plunkett's required McClernon to enter into a revised Non-Competition and Trade Secret Agreement (the "Agreement," attached as Exhibit 1 hereto) on April 1, 2021.

15. By signing the Agreement, McClernon generally agreed to maintain Plunkett's confidential, proprietary business information and trade secrets, including but not limited to, current and prospective customer information, marketing strategies, business models, and specialized industry knowledge (hereinafter "Confidential Information") indefinitely and further agreed to refrain from competing with Plunkett's or soliciting its customers following the

termination of his employment for a period of eighteen (18) months, and such restriction was limited to Two Hundred (200) miles from the Franklin County, Ohio Courthouse (the "Franklin County Courthouse.")

16. As a Regional Operations Manager, McClernon had access to and routinely utilized Plunkett's Confidential Information.

17. Plunkett's has expended significant resources in cultivating its Confidential Information, and strictly guards its Confidential Information. Such information is not available or discoverable to the public, let alone Plunkett's competitors.

18. Plunkett's would not have continued to employ McClernon had he not entered into the Agreement.

19. The Agreement was supported by good and valuable consideration.

20. Specifically, the Agreement contains the following relevant terms:

> 1. In the event employee's employment is for any reason hereafter terminated, whether by employee or by Plunkett's and whether with or without cause, *employee will not, for a period of eighteen (18) months following the effective date of the termination, directly or indirectly (whether as an employee, owner, partner, or otherwise) perform, sell, or attempt to sell pest control and related services anywhere within a two hundred (200) mile direct radius from [the Franklin County Courthouse.]*
> 
> ***
> 
> 3. Additionally, during the eighteen (18) months [sic] period following the termination of employment, employee *shall not directly or indirectly perform sell, or solicit the sale of pest control and related services for any customer for such services located anywhere (1) for whom employee has at any time performed pest control or related services as an employee of Plunkett's; or (2) to whom employee has at any time attempted to sell pest*

> *control and related services to be performed by Plunkett's; or (3) who Plunkett's has notified employee, by writing mailed employee's last known address, is a customer for whom Plunkett's had performed any services within the eighteen (18) months preceding the effective date of employee's termination*.
>
> \*\*\*
>
> 10. Employee *acknowledges that the identity of all present and future Plunkett's customers, the identity and preferences of their customer personnel, and the methods of providing services within the customers' individual* premises *are trade secrets within the definition and meaning of the Uniform Trade Secrets Act. M.S 325C. 01-08*; as are all Plunkett's service records, all Plunkett's employee handbooks and manuals, all compilations of pesticide characteristics and application procedures, and the identity of all customer prospects contained in the course of employment by Plunkett's. Employee agrees not to disclose any part of these trade secrets to any third person without the explicit written consent of Plunkett's; or to utilize any part of these trade secrets for employee's own benefit, or for the benefit of any third person, or in any way to the detriment of Plunkett's.

Exh. 1, ¶¶ 1, 3, 10. (Emphasis added.)

21. Additionally, the Agreement expressly provides that Plunkett's is entitled to injunctive relief to enforce its rights under the Agreement as a result of McClernon's breach or threatened breach thereof.  Exh. 1, ¶ 4.

22. The Agreement further contains a liquidated damages provision, which provides that in the event of McClernon's breach, Plunkett's may elect, at any time prior to the entry of final judgment, to recover from McClernon an amount equal to one-half of the gross wages and commissions and bonuses earned by McClernon during the eight months preceding his termination. *Id*.

23. On or around October 1, 2022, Plunkett's promoted McClernon to Director of Operations, South Division.

24. As a Director of Operations, McClernon gained additional exposure and access to Plunkett's Confidential Information.

25. At all relevant times, as a Director of Operations, McClernon was subject to the covenants contained within the Agreement.

26. During McClernon's tenure as a Director of Operations, Plunkett's learned that McClernon engaged in unprofessional conduct, including by making inappropriate comments of a sexual nature in the workplace.

27. Plunkett's addressed McClernon's behavior, including by discussing with McClernon Plunkett's expectations regarding professionalism within the workplace.

28. Nonetheless, in or around February of 2025, Plunkett's discovered McClernon continued to engage in improper conduct, including by making comments of a sexual nature regarding a female technician within his supervision.

29. Plunkett's investigated McClernon's continued improper conduct, during which time McClernon admitted to his improper conduct, and several other witnesses reported additional inappropriate harassing or discriminatory comments by McClernon in the workplace.

30. As such, on February 27, 2025, Plunkett's terminated McClernon's employment for violating Plunkett's harassment policy. A true and accurate copy of McClernon's Termination Notice is attached hereto as Exhibit 2.

31. Pursuant to McClernon's termination, on or around March 25, 2025, Plunkett's and McClernon entered into the Separation and Release Agreement (the "Separation

Agreement"). A true and accurate copy of the Separation Agreement is attached hereto as Exhibit 3.

32. The Separation Agreement states:

> **Other Agreements**. *I agree to comply with all other agreements I signed in conjunction with my employment with [Plunkett's]. This includes any prior agreements concerning nondisclosure of confidential information or trade secrets, nonsolicitation of employees or customers with Plunkett's*. Furthermore, I understand that my obligations under any such agreements arose when I signed them, and this Paragraph simply restates my ongoing obligations.

Exh. 3. (Emphasis added.)

33. Plunkett's relied upon McClernon's representations to enter into the Separation Agreement.

34. In consideration for the Separation Agreement, Plunkett's paid McClernon $75,000.00. *See* Exh. 3.

35. Thus, as of McClernon's termination, the Agreement remained valid and binding upon McClernon.

36. McClernon agreed not to compete with Plunkett's for a period of 18 months post-termination. Therefore, McClernon is restricted from competing with Plunkett's until August 27, 2026.

37. Likewise, McClernon's indefinite restrictions on the use or disclosure of Plunkett's Confidential Information remain in effect.

38. On March 13, 2025, McClernon incorporated Eco-Sential in the State of Ohio.

39. McClernon formed Eco-Sential prior to his execution of the Separation Agreement.

40. Pursuant to its Articles of Incorporation, Eco-Sential is "a full-service pest management firm committed to prioritizing public health and delivering safe, effective and client focused pest control solutions." A true and accurate copy of the Eco-Sential's Articles of Organization is attached hereto as Exhibit 4.

41. Eco-Sential is a direct competitor of Plunkett's.

42. Upon information and belief, McClernon is the owner and operator of Eco-Sential.

43. On its website, Eco-Sential holds itself out as doing business in Marysville, Union County, and surrounding areas including Delaware, Logan, Champaign, Madison, and Franklin Counties.

44. Each of the areas in which Eco-Sential holds itself out as doing business is within a two-hundred-mile direct radius of the Franklin County Courthouse.

45. Likewise, Plunkett's operates in each of the areas in which Eco-Sential operates, or intends to operate, and such areas were included in McClernon's territory while employed by Plunkett's.

46. McClernon, by and through Eco-Sential, is unfairly competing with Plunkett's.

47. McClernon, by and through Eco-Sential, is expressly violating the terms of the Agreement and the Separation Agreement regarding McClernon's covenant not to compete with Plunkett's.

48. In addition, despite only being in its nascent stages, Eco-Sential advertises several customer testimonials on its website.

49. Upon information and belief, one or more of these customer testimonials was written by one or more of Plunkett's current, former, or prospective customers.

50. Upon information and belief, McClernon, through Eco-Sential, has directly or indirectly performed, sold, or solicited the sale of pest control and related services for one or more of Plunkett's current, former, or prospective customers in violation of the Agreement and the Separation Agreement.

51. Further, upon information and belief, McClernon and Eco-Sential are unlawfully using Plunkett's Confidential Information to unfairly compete with Plunkett's by soliciting, or attempting to solicit, Plunkett's customers.

52. Additionally, Plunkett's employed McClernon's daughter, Megan Lesak ("Lesak"), as a Warehouse Assistant.

53. Lesak resigned from her employment with Plunkett's.

54. Upon information and belief, Lesak resigned from her employment because Plunkett's terminated McClernon's employment.

55. Upon her resignation, a review of Lesak's Plunkett's email account shows that Lesak forwarded Plunkett's Confidential Information to her personal email account.

56. Upon information and belief, Lesak shared Plunkett's Confidential Information with McClernon.

57. Upon information and belief, McClernon has used and continues to use Plunkett's proprietary information for Eco-Sential's benefit.

58. McClernon has unfairly competed, and continues to unfairly compete, against Plunkett's, and upon information and belief, abuse and misuse Plunkett's Confidential Information.

59. McClernon and Eco-Sential's unlawful conduct has caused, and continues to cause, damage to Plunkett's.

60. Absent injunctive relief, Plunkett's will be irreparably harmed by Defendants' continued unlawful and tortious conduct.

## COUNT ONE
### (Breach of Contract – Against McClernon)

61. Plunkett's restates and realleges each of the allegations contained in the preceding paragraphs as if fully rewritten herein.

62. McClernon's employment with Plunkett's ended effective February 27, 2025.

63. Pursuant to the Agreement and the Separation Agreement, McClernon agreed to refrain from disclosing Plunkett's Confidential Information.

64. Pursuant to the Agreement and the Separation Agreement, McClernon agreed to refrain from competing with Plunkett's for eighteen (18) months following the termination of his employment.

65. Pursuant to the Agreement and the Separation Agreement, McClernon agreed to refrain from the solicitation of or interference with any Plunkett's customer or prospective customer for eighteen (18) months following the termination of his employment.

66. Upon information and belief, McClernon owns and operates Eco-Sentential, a direct competitor to Plunkett's.

67. Upon information and belief, McClernon has solicited or attempted to solicit Plunkett's customers to the benefit of McClernon and Eco-Sential.

68. Upon information and belief, McClernon has interfered with and misused Plunkett's Confidential Information and trade secrets, and is utilizing such information for McClernon and Eco-Sential's benefit at the detriment of Plunkett's.

69. As such, McClernon has breached the Agreement and the Separation Agreement.

70. McClernon's breach of the restrictive covenants, which he repeatedly affirmed, has resulted and will continue to result in irreparable injuries to Plunkett's that are incapable of exact proof, and for which no adequate remedies at law exist.

71. The Agreement contains a stipulation from McClernon that injunctive relief is proper for any breach McClernon commits or may commit of the Agreement.  Exh. 2, ¶ 4.

72. Plunkett's is entitled to a preliminary and permanent injunction enjoining McClernon from unfairly competing with Plunkett's, soliciting and/or interfering with its customers and disclosing its Confidential Information in accordance with the Agreement.

73. An injunction will not harm McClernon, but merely maintain the status quo until this Court can reach the merits of the dispute.

74. A preliminary and permanent injunction restraining McClernon from continuing to exploit Plunkett's Confidential Information, in accordance to the terms he agreed to, is in the public interest of protecting and enforcing the legitimate contract rights of Plunkett's. Further, McClernon is free to pursue non-competitive employment.

75. As a direct and proximate result of McClernon's breach of the Agreement and the Separation Agreement, Plunkett's has been damaged and will continue to be damaged in an amount to be determined at trial, but at least in excess of $75,000.00.

76. Further, pursuant to Paragraph 4 the Agreement, Plunkett's is entitled to recover from McClernon as liquidated damages and not as penalty money judgement in an amount equal to one-half of the gross wages and commissions and bonuses earned by employee during the eight months preceding McClernon's termination

## COUNT TWO
### (Fraudulent Inducement – Against McClernon)

77. Plunkett's restates and realleges each of the allegations contained in the preceding paragraphs as if fully rewritten herein.

78. Upon information and belief, McClernon incorporated and began to operate Eco-Sential, in violation of the Agreement, on March 13, 2025.

79. McClernon and Plunkett's entered into the Separation Agreement on March 27, 2025.

80. By entering into the Separation Agreement, McClernon knowingly misrepresented to Plunkett's that he was in compliance with the Agreement.

81. By entering into the Separation Agreement, McClernon knowingly misrepresented to Plunkett's that he would continue to comply with the Agreement.

82. Upon information and belief, McClernon made these misrepresentations with the intent of inducing Plunkett's reliance on the same.

83. Plunkett's relied on these misrepresentations to its detriment when it entered into the Separation Agreement.

84. As a result of McClernon's misrepresentations, Plunkett's entered into the Separation Agreement, and paid McClernon $75,000.00 pursuant thereto.

85. As a direct and proximate result of McClernon's misrepresentations, Plunkett's has been damaged and will continue to be damaged in an amount to be determined at trial, at least in excess of $75,000.00.

## COUNT THREE
**(Misappropriation of Trade Secrets – Ohio Revised Code § 1333.61 – All Defendants)**

86. Plunkett's restates and realleges each of the allegations contained in the preceding paragraphs as if fully rewritten herein.

87. Upon information and belief, McClernon has retained Plunkett's Confidential Information, including its trade secrets and proprietary information.

88. Upon information and belief, McClernon has disclosed or utilized Plunkett's trade secrets for the benefit of himself and Eco-Sential, and will continue to disclose or utilize, or will inevitably disclose or utilize Plunkett's trade secrets for Defendants' benefit.

89. Upon information and belief, McClernon has engaged in such conduct with the full knowledge of its impact on Plunkett's business, and with actual malice and/or a reckless disregard towards the same.

90. The nature of McClernon's misappropriation of Plunkett's trade secrets is such that it was undertaken with deliberate intent to cause injury to Plunkett's, or undertaken with reckless disregard towards Plunkett's.

91. McClernon's misappropriation of Plunkett's trade secrets has resulted and will continue to result in irreparable injuries to Plunkett's that are incapable of exact proof, and for which no adequate remedies at law exist.

92. Plunkett's is entitled to a preliminary and permanent injunction enjoining McClernon from misappropriating Plunkett's trade secrets.

93. An injunction will not harm McClernon, but merely maintain the status quo until this Court can reach the merits of the dispute.

94. A preliminary and permanent injunction restraining McClernon from continuing to misappropriate Plunkett's trade secrets, is in the public interest of protecting a business's trade secrets.

95. As the direct and proximate result of Defendants' misappropriation of Plunkett's trade secrets, Plunkett's has been damaged and will continue to be damaged in an amount to be determined at trial, but at least in excess of $75,000.00.

**COUNT FOUR**
**(Tortious Interference with Business Relations – Against All Defendants)**

96. Plunkett's restates and realleges each of the allegations contained in the preceding paragraphs as if fully rewritten herein.

97. Plunkett's has a business relationship with each of its customers.

98. Eco-Sential, by and through McClernon's previous employment with Plunkett's, has knowledge of such relationships.

99. Upon information and belief, McClernon intentionally interfered with those relationships by soliciting or attempting to solicit their business in violation of the Agreement, on behalf of Eco-Sential.

100. Upon information and belief, Defendants' intentional interference caused a breach or termination of those relationships.

101. As the direct and proximate result of Defendants' actions, Plunkett's has been damaged and will continue to be damaged in an amount to be determined at trial, but at least in excess of $75,000.00.

WHEREFORE, Plaintiff Plunkett's Pest Control, Inc. demands judgment its favor against Defendants as follows:

    A.    A preliminary and permanent injunctions restraining and enjoining McClernon from violating the Agreement and the Separation Agreement, including without limitation the post-termination, non-competition and confidential information covenants contained therein;

    B.    A preliminary and permanent injunctions restraining and enjoining Defendants from utilizing, disclosing, and/or retaining (including any and all copies and electronic storage of Plunkett's customer lists) Plunkett's trade secret information, including all proprietary business information, documents, and trade secrets, and requiring the return of all such materials to Plunkett's forthwith;

    C.    A preliminary and permanent injunctions restraining and enjoining McClernon from competing with Plunkett's directly or indirectly for a period of eighteen (18) months beginning with the date of this Court's entry of the injunction;

    D.    A judgment against McClernon for compensatory damages in an amount as shall be proven at trial, arising from McClernon's breach of contract;

    E.    A judgment against McClernon and Eco-Sential for compensatory damages in an amount as shall be proven at trial, plus punitive damages, arising from Defendants' tortious conduct in misappropriating Plunkett's proprietary trade secret information;

    F.    A judgment against McClernon for compensatory damages in an amount as shall be proven at hearing, plus punitive damages, arising from McClernon tortious conduct in

    fraudulently inducing Plunkett's to enter into the Separation Agreement;

G. A judgment against McClernon and Eco-Sential for compensatory damages in an amount as shall be proven at hearing, plus punitive damages, arising from Eco-Sential's tortious conduct in interfering with Plunkett's business relationships; and

H. A judgment against McClernon compensating Plunkett's for all damages resulting from McClernon's breaches of the Agreement and the Separation Agreement, and other tortious conduct, as well as Plunkett's attorney fees, punitive damages, pre-and-post-judgment interest at the statutory rate on any amount awarded, and any such other relief deemed equitable and just.

    Respectfully submitted,

    */s/ Jonathan T. Hyman*
    Jonathan T. Hyman (No. 0068812)
    E-mail JHyman@WickensLaw.com
    Matthew N. Danese (No. 0096828)
    E-mail MDanese@WickensLaw.com
    Dominic M. Parish (No. 0097014)
    Email DParish@WickensLaw.com
    Docket E-mail Docket@WickensLaw.com
    WICKENS HERZER PANZA
    35765 Chester Road
    Avon, OH 44011-1262
    (440) 695-8044 (Main)
    (440) 695-8098 (Fax)

    ATTORNEYS FOR PLAINTIFF PLUNKETT'S PEST CONTROL, INC.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) Plaintiff Plunkett's Pest Control, Inc. hereby demands a trial by jury by the maximum number of jurors allowable by law for all claims so triable.

/s/ Jonathan T. Hyman
Jonathan T. Hyman
Matthew N. Danese
Dominic M. Parish